**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

CHRISTINE CAMP,

        Plaintiff,                                  CASE NO. 4:08cv73-SPM/AK

vs.

RESIDENTIAL ELEVATORS, INC.,

        Defendant.

_____/

## ORDER

THIS CASE comes before the Court upon Defendant's motion for judgment as a matter of law or for a new trial (doc. 102). Plaintiff has filed a response in opposition (doc. 110). Defendant renews its motion for judgment as a matter of law or in the alternative, a new trial pursuant to Federal Civil Procedure Rule 50(b). Defendant's motion also takes issue with the jury estimation of the damages award and requests that this Court vacate the award or grant Defendant's motion for a new trial. In another motion that will be addressed by this order, Defendant objects to the Clerk of the Court entering judgment in this case because Defendant argues, the judgment entry was in violation of Federal Civil Procedure Rule 58(b). (doc. 104). Plaintiff responds that the verdict form used in this case was a general verdict and not a special verdict, therefore, the Court did not have to instruct or approve entry of the

judgment (doc. 112).

This case involves a gender discrimination claim by Plaintiff Christine Camp against her former employer, Defendant Residential Elevators.  This case went to trial and a jury verdict was entered for Plaintiff.  The jury awarded Plaintiff $38,400 in damages.  According to the working of the verdict form, the damages awarded represented a "net loss of wages and benefits".  Defendant now renews its motion for judgment as a matter of law by claiming that Plaintiff did not establish a prima facie case for gender discrimination because she did not present evidence that she applied to and was refused an open and available position.  In the alternative, Defendant argues that this Court should order a new trial because the verdict for the Plaintiff was contrary to the manifest weight of the evidence.  Furthermore, Defendant argues that the jury committed a legal error when they awarded $38,400 in damages to Plaintiff and that this Court should therefore vacate the jury's damages award.

**Renewed Motion for Judgment as a Matter of law**

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. Proc. 50(a)).  In examining this motion, and reviewing all of the evidence in the record, this Court must "give credence to the evidence favoring the [Plaintiff] as well as that 'evidence supporting the [Defendant] that is

uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,300 (1986).  However, in reviewing the evidence, the granting of a motion for a judgment as a matter of law must be granted only if "'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'"  Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting Watts v. Great Atl. & Pac. Tea Co., 842 F.2d 307, 309-10 (11th Cir. 1988) (per curiam))

  Plaintiff claimed that on at least three occasions, she requested and was denied an opportunity to be a sales representative for Residential Elevators. Plaintiff testified that she requested sales positions in Miami and Tallahassee. With regard to the Miami sales position, Plaintiff testified that Luis Cainas had been fired from the Miami sales position and that Plaintiff had asked Eric Sharkey, the senior vice president about taking over that position until he could find a permanent replacement.  However, instead of considering Plaintiff, Sharkey allows Chris Deason to cover the Miami area temporarily.  Later, after advertising for the position, Sharkey hired a male named Mitch Balan.  Defendant argues in it's current motion that Plaintiff informed her of her interest in the position too late and that by the time Plaintiff inquired, Sharkey had already assigned Chris Deason to that position temporarily.  However, at trial, Sharkey testified that Plaintiff was not really asking to take over Cainas's former

position–she was only asking to help out in any way that she could. The testimony between Sharkey and plaintiff conflicted about when and whether Plaintiff actually communicated to Sharkey an interest in the Miami sales representative position. A decision about who told the truth on the stand is a credibility determination to be made by the jury, not by this Court. They certainly could have determined that Plaintiff was more credible and that there was an open position in Miami, and that Plaintiff did communicate her interest clearly and in time for her to be considered and that the position could have been filed by Plaintiff but was instead filled by a male employee.

Plaintiff also testified that she had repeatedly expressed an interest in a Tallahassee sales position. The sales representative position in Tallahassee became available when Chris Deason took on additional tasks in Miami and Sharky needed someone to cover some of Deason's sales representative duties in Tallahassee. Plaintiff testified that she expressed interest in this position. Sharkey testified that Plaintiff did not express interest. Sharkey also testified that he created a special sales position so that Deason could have an assistant. This special position was filled by Chad Jordan, a person who was recommended by Deason but who came from outside of the company. Though Deason's assumption of more responsibilities did not technically create a vacancy in his former position as sales representative, it did create an opportunity for this special sales position to be created. Plaintiff could have filled such a position and she testified that she specifically asked to fill any position that came available as

a result of Deason's assumption of additional duties.  A reasonable juror could have found that this special position was an open and available position that had been created for Chad Jordan because he was a male and not for Plaintiff because she was a female.

Furthermore, independent of the question of whether there really were open and available positions, Sharkey testified that Plaintiff *never* expressed to him any interest in a sales representative or a sales technician position.  Plaintiff however, testified that she often expressed an interest in moving into a sales position and that she never gave up this interest at any point in her employment.  A reasonable jury could have determined that Sharkey was not credible, but Plaintiff was.  In doing so, a reasonable juror could have believed Plaintiff's claims that there were positions available and that she did express interest in those positions–even if this testimony is in conflict with a significant portion of Sharkey's testimony.  Whether there actually was an open and available position and whether Plaintiff knew about and sought that open and available position is not a legal question, but a question of fact for the jury to consider in their credibility determinations.  The jury could have decided that they believed all of Plaintiff's testimony, all of Sharkey's testimony, or some of both.  In doing so, they could have decided that at least one of the opportunities that Plaintiff expressed interest in was an open and available position, whether or not Sharkey admitted to Plaintiff or to the jury that it indeed was an open and available position.

This Court cannot find that reasonable jurors could not have found in favor of Plaintiff.  The conflicting evidence in this trial was such that "'reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.'"  Lipphardt, 267 F.3d at 1186 (quoting Watts v. Great Atl. & Pac. Tea Co., 842 F.2d 307, 309-10 (11th Cir. 1988)).  Therefore, Defendant is not entitled to judgment as a matter of law.

**Motion to Vacate Damages Award**

The jury awarded $38,400 in damages.  The verdict sheet indicates that the jury was compensating Plaintiff for "a net loss of wages and benefits to Plaintiff's resignation on July 27, 2006."   Defendant argues that this Court should adjust the jury award of damages because the jury awarded back wages that do not represent Plaintiff's net wages and benefits and that the jury did not deduct Plaintiff's actual pay of $14,728.12 from the amount awarded.  Defendant argues that this mistake in calculation is a legal error that the Court must cure by vacating the award.

Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-5(g), specifically, Section 706(g) of the Act, authorizes relief for victims of unlawful employment practices.  This relief includes back pay.  "Back pay is 'the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained.'"  Akouri v. Fla. DOT, 408 F.3d 1338, 1343 (11th Cir. 2005) (quoting Gunby v. Pennsylvania Electric Co., 840 F.2d 1108, 1119-20 (3d Cir. 1988)).

Case 4:08-cv-00073-SPM-WCS   Document 125   Filed 06/04/09   Page 7 of 12

"'Unrealistic exactitude is not required' as the back-pay calculation may be based on 'just and reasonable inference' of the missing or imprecise figure." Akouri v. Fla. DOT, 408 F.3d 1338, 1343 (11th Cir. 2005) (quoting Pettway v. Am. Cast Iron Pipe Co., 494 F.2d 211, 260 (5th Cir. 1974)).

"A federal court has no general authority to reduce the amount of a jury's verdict." Johansen v. Combustion Eng'g., 170 F.3d 1320, 1328 (11th Cir. 1999) (citing Kennon v. Gilmer, 131 U.S. 22 (1889)). "However, when a court finds that a jury's award of damages is excessive, it may grant the defendant a new trial unless the plaintiff agrees to remit a portion of the jury's award." Rau v. Apple Rio Mgmt. Co., 2000 U.S. Dist. LEXIS 20396 (N.D. Ga. Mar. 20, 2000). But this Court has discretion to determine whether a new trial should be granted. Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1447-48 (11th Cir.1985). "A new trial should be ordered only when the verdict is so excessive as to shock the conscience of the court." Carter v. Decisionone Corp., 122 F.3d 997, 1006 (11th Cir. 1997). "When the jury's verdict is within the bounds of possible awards supported by the evidence, its award should not be disturbed." Id. (citing Narcisse v. Illinois Central Gulf Railroad Co., 620 F.2d 544 (5th Cir.1980)).

In this case, the jury award of $38,400 was not grossly disproportionate to the constitutional violation that occurred. Though maybe not exactly precise and the jury did not deduct Plaintiff's actual pay from the amount awarded, it is not an excessive amount and it does bear a rational relationship to the evidence presented at trial. Sharkey testified that salary for sales representatives ranged

Page 7 of 12

from $25,000 to $45,000and that the representatives received percentage commissions and bonuses. Accordingly, an award of $38,000 for back pay appears to be based on a just and reasonable inference of the imprecise figures presented at trial. Plaintiff's award was proper and will not be disturbed by this Court. Defendant's motion to vacate or amend the award will be denied.

**Objection to Clerk's Judgment**

Defendant argues that this case utilized a special verdict. Therefore, Defendant argues, in accordance with Federal Civil Procedure Rule 58(b)(2), this Court must approve the form of judgment before it is entered by the Clerk. Plaintiff responds that the verdict in this case was not a special verdict but a general verdict which can be entered without the Court's direction, pursuant to Federal Civil Procedure Rule 58(b)(1)(A). The judgment in this case was entered by the Clerk of the Court on March 4, 2009 (doc. 101). The issue is whether this verdict form was a "special verdict form" or a "general verdict form" and whether the Clerk needed direction from the Court before entering judgment.

In this case, the jury was asked whether they found:

1. That the Plaintiff was denied an open or available promotional opportunity by the Defendant.

2. That the Plaintiff's gender was a substantial or motivating factor that prompted the Defendant to deny Plaintiff the promotional opportunity.

3. That Defendant would have denied Plaintiff the promotional opportunity for reasons other than Plaintiff's gender.

Federal Civil Procedure Rule 49 describes a special verdict as one that contains "a special written finding on each issue or fact."  A special verdict is created by "A) submitting written questions susceptible of a categorical or other brief answer; (B) submitting written forms of the special findings that might properly be made under the pleadings and evidence; or (C) using any other method that the court considers appropriate."  There is no definition or description listed for a "general verdict" in the Federal Rules of Civil Procedure.

As explained in Moore's Federal Practice, "[a] special verdict is returned in lieu of a general verdict and contains factual findings on all of the material issues in the case."  9 James Wm. Moore et al., Moore's Federal Practice § 49.02 (citing to Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1453 (Fed. Cir. 1984)).  The Supreme Court has described a general verdict as one that refers "to the sole question of liability".  United States v. Indrelunas, 411 U.S. 216, 219 (1973).  "A general verdict is also defined as a 'verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions.'" Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1201 (11th Cir. 2004) (quoting Mason v. Ford Motor Co., 307 F.3d 1271, 1274 (11th Cir. 2002)).  By way of contrast, a verdict form that contains multiple factual inquiries "cannot be characterized as a general verdict."  Wilbur v. Corr. Servs. Corp., 393 F.3d at 1201.  Additionally, The Eleventh Circuit offered this guidance:

> A general verdict is . . . a verdict by which the jury pronounces *generally* on all or any of the issues, either in favor of the plaintiff or in favor of the defendant. In contrast, a Rule 49(a) special verdict is a verdict by which the jury finds the facts *particularly*, and then submits to the court the questions of law arising on them.

Mason v. Ford Motor Co., 307 F.3d 1271, 1274 (11th Cir. 2002) (holding that a verdict form that simply asked the jury whether they found in favor of the Plaintiff or the Defendant on two different theories of liability was a general verdict form) (emphasis added) (internal citations and quotations omitted). Verdict forms are also distinguished by what it communicates about the jury's intentions. A special verdict explains "the specific grounds for the jury's rationale" and in a general verdict "the basis of the jury's verdict is not known". United States v. Hamaker, 455 F.3d 1316, 1338 (11th Cir. 2006).

In this case, the questions on the verdict form do not simply ask whether or not the Defendant was liable for violations of Plaintiff's right to be free from gender discrimination. They ask the jury to determine each of the specific elements of Plaintiff's gender discrimination claim. They did not require the jurors to find facts particularly, but they did more than just require the jury to find in favor of the Defendant or the Plaintiff, as the general verdict form in Mason did.

The first question on the verdict form in this case inquired as to whether Plaintiff was denied an "open or available promotional opportunity." This was a

factual inquiry that by itself, would not determine the liability of the Defendant.  In a general verdict form, for each claim, there would likely only be one question for each claim that would indicate whether the Defendant was liable or not for that claim.  In this case, there were three separate questions for one claim.  Additionally, all three of the questions had to be answered in the affirmative in order for the Defendant to be found liable.  Although there was no opportunity for jurors to provide written answers to questions and there was no resolution of specific fact questions, the verdict form here did contain multiple factual findings, that when put together, result in a declaration of liability against Defendant.  Therefore, this Court finds that the verdict form used in this case was a special verdict form and that this Court should have approved the form of judgment before it was entered by the Clerk of Court.

After review of the trial testimony and consideration of the arguments of the parties, for all the reasons stated above, it is hereby ORDERED AND ADJUDGED as follows:

1. Plaintiff's motion for more time to respond to Defendant's post-trial motions (doc. 109)  is **granted**.  Plaintiff's responses are all accepted as timely filed.

2. Defendant's renewed motion for judgment as a matter of law (doc. 102) is hereby **denied**, as is its alternative motion for a new trial.

3. Defendant's motion for a stay of the execution of judgment (doc.

       103) is ***denied as moot***.

4. Defendant's objection to the Clerk's entry of judgment is hereby construed as a motion to approve the Clerk's judgment, pursuant to Federal Civil Procedure Rule 58(b)(2). Such motion is ***granted*** and this Court hereby approves the form of the judgment that was entered by the Clerk on March 4, 2009.

5. Defendant's 30-day time period for filing its notice of appeal, in accordance with Federal Rule of Appellate Procedure 4(a)(1)(A) shall run from the date of this order.

DONE AND ORDERED this <u>fourth</u> day of June, 2009.


       *s/ Stephan P. Mickle*
       Stephan P. Mickle
       United States District Judge